# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| NATIONAL SALVAGE & ) <br> SERVICE CORPORATION ) <br> 6755 S. OLD STATE ROAD 37, ) <br> BLOOMINGTON, INDIANA 47401 ) <br>   ) <br> Plaintiff, ) <br>   ) <br> vs. ) <br>   ) <br> FLORIDA EAST COAST ) <br> RAILWAY, LLC ) <br> c/o CT CORPORATION SYSTEM ) <br> 1200 SOUTH PINE ISLAND ) <br> ROAD ) <br> PLANTATION, FL 33324 ) <br>   ) <br> and ) <br>   ) <br> ATLANTIC CAN, INC. ) <br> C/O BRAD GORDON ) <br> 2754 SHADE TREE DR ) <br> FLEMING ISLAND, FL 32003 ) <br>   ) <br> Defendants. ) | CASE NO. <br><br> JUDGE: |

## **COMPLAINT**

Plaintiff, National Salvage & Service Corporation ("National Salvage"), by and through counsel, for its cause of action against Defendants Florida East Coast Railway, LLC, ("FECR") and Atlantic Can, Inc. ("Atlantic Can"), alleges and states as follows:

## A. Parties, Jurisdiction and Venue

1. National Salvage is an Indiana corporation with its principal offices located at 6755 S. Old State Road 37, Bloomington, Indiana 47401.

2. FECR is a Florida limited liability company with its principal offices located at 7150 Philips Highway Jacksonville, Florida 32256. Upon information and belief, all of FECR's members are citizens of Florida.

3. Atlantic Can is a Florida corporation with its principal offices located at 2754 Shade Tree Drive, Fleming Island, Florida 32003.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(A)(2) because the amount in controversy exceeds $75,000.00, and this action is brought as a civil matter by a citizen of the State of Indiana against citizens of the State of Florida.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

## B. Factual Allegations Applicable To All Claims

6. National Salvage is a company that serves as a national expert in demolition and dismantlement projects.

7. As part of National Salvage's business, it regularly removes buildings, power plants, bridges and railroads and disposes of, or recycles, the materials.

8. FECR is a regional railroad in the State of Florida that runs from Jacksonville to Miami.

9. On May 24, 2017, National Salvage approached FECR in a letter expressing interest and submitting a proposal for assisting FECR with the removal and disposal of its concrete and wood railroad ties as well as its railroad rail. A true and accurate copy of the correspondence is attached as **Exhibit A**.

10. National Salvage proposed the following per unit price estimate:

| Material | Price | Est. Quantity | Price |
| --- | --- | --- | --- |
| Rail/GT | $140/GT | 281,000LF or 5245 GT | $734,300 |
| Wood Ties | $5.50 Each | 22,000 | $(121,000) |
| Concrete Ties | $7.00 Each | 28,600 | $(200,200) |

11. As part of the arrangement for the railroad rail, National Salvage would remove and re-sell it, then return a share of resale profits to FECR at the set price per gross ton.

12. In total, National Salvage estimated the on-track project to result in a net payment of $413,100.00 to FERC.

13. In addition, National Salvage offered, at FECR's option, to remove the pile of concrete and wood ties in the Miami railyard at the same per unit price estimate:

| Material | Price | Est. Quantity | Price |
|---|---|---|---|
| Wood Ties | $5.50 Each | 80,000 | $440,000 |
| Concrete Ties | $7.00 Each | 3,000 | $21,000 |

14. The total estimated cost to FECR for the tie pile removal was $461,000.00.

15. National Salvage detailed that the wood ties would be removed and incinerated and the concrete ties would be loaded on the FECR line to be transported to a crushing facility, or would be moved by truck either to a customer or crushing facility.

16. On or about August 24, 2017, FECR and National Salvage executed a contract for the disposal and scrap metal resale services at the rates proposed in National Salvage's May 24, 2017 proposal (the "FECR Contract"). A true and accurate copy of the FECR Contract is attached as **Exhibit B**.

17. Throughout the course of performance under the FECR Contract, FECR requested further increase in the number of ties to be removed and the locations from where removal was to take place.

18. On or around January 18, 2018, National Salvage informally subcontracted Atlantic Can, a company that specializes in the removal and disposal of concrete, to provide limited assistance with the removal and stockpiling of a small number of concrete rail ties.

19. During this time, National Salvage also engaged another subcontractor Mathison to assist with concrete tie removal on a limited basis from mid to late 2018.

20. Months later, on or about June 4, 2018, National Salvage again sought Atlantic Can's assistance on a more regular basis. Atlantic Can continued to assist from that point on almost a daily basis.

21. Atlantic Can provided regular reports to both National Salvage and FECR of its "tie-counts"—the number of concrete ties processed.

22. Atlantic Can continued to informally assist throughout 2018 until on or around January 23, 2019, Atlantic Can was further engaged, entering into an arrangement where National Salvage granted Atlantic Can the right to sell scrap metal produced from the destruction of approximately 50,000 concrete ties in an amount not to exceed 1000 gross tons. A true and accurate copy of the correspondence is attached as **Exhibit C**.

23. National Salvage continued to engage Atlantic Can for assistance in the FECR Contract and on about February 22, 2019, Atlantic Can wrote to National Salvage to memorialize a recent telephone conference where National Salvage made additional requests for Atlantic Can services. A true and accurate copy of the correspondence is attached as **Exhibit D**.

24. Specifically, National Salvage requested that Atlantic Can increase its efforts to remove the remaining estimated 100,000 concrete ties and processing them

with a goal average of 20,000 ties per month at the Ft. Pierce and St. Augustine railyards. Atlantic Can also offered its services elsewhere on the project as needed.

25. Atlantic Can's price was $4.50/tie for processing both previously uncollected ties as well as those it collected, with no additional cost for recycling, crushing, or other disposal. Ties collected by other prior servicers would be removed and processed by Atlantic Can for $2.00/tie.

26. Finally, Atlantic Can explained that:

> As in the past operations, tie-counts and any other authorized activity invoicing will be provided for review and payment the following week. Atlantic Can's accounting for previous work performed has been verified to be reliable; however, additional efforts will be undertaken to assure the integrity of the reports. An open communication will be provided for any questions, or comments during this program.

27. On or about March 26, 2019, Atlantic Can provided a letter of intent for a contracting agreement to assist National Salvage with removal and disposal under the FECR Contract. A true and accurate copy of the correspondence is attached as **Exhibit E**.

28. Atlantic Can worked throughout 2019 to remove concrete ties as requested and submitting regular tie-counts to FECR and National Salvage.

29. In total, Atlantic Can invoiced National Salvage for approximately 197,000 concrete ties removed, stockpiled and/or crushed. True and accurate copies of the invoices are attached as **Exhibit F**.

30. National Salvage then invoiced FECR for the approximately 187,000 rail ties. True and accurate copies of the invoices are attached as **Exhibit G**.

31. The total amount invoiced by National Salvage to FECR was $1,313,137.00 detailed as follows:

| Invoice No. | Date | Desc. | Amt. |
|---|---|---|---|
| 201812591 | 1/9/2019 | FECR - SCRAP RAIL/TIES-FL-2017 | 52,479.00 |
| 201902585 | 2/28/2019 | FECR - SCRAP RAIL/TIES-FL-2017 | 148,715.00 |
| 201906601 | 6/30/2019 | FECR - SCRAP RAIL/TIES-FL-2017 | 189,000.00 |
| 201906600 | 6/30/2019 | FECR - SCRAP RAIL/TIES-FL-2017 | 226,891.00 |
| 201906599 | 6/30/2019 | FECR - SCRAP RAIL/TIES-FL-2017 | 138,138.00 |
| 201906598 | 6/30/2019 | FECR - SCRAP RAIL/TIES-FL-2017 | 168,245.00 |
| 201907601 | 7/31/2019 | FECR - SCRAP RAIL/TIES-FL-2017 | 213,164.00 |
| 201909535 | 9/25/2019 | FECR - SCRAP RAIL/TIES-FL-2017 | 176,505.00 |

32. After accounting for limited amounts paid by FECR and amounts owed by National Salvage to FECR for metal rail scrap, the remaining balance owed by FECR to National Salvage under the FECR Contract was $486,132.93.

33. Upon submission by National Salvage of the invoices for payment, FECR raised certain discrepancies with the tie-counts reported by Atlantic Can.

34. FECR claimed that the approved and acknowledged number of concrete ties was only 75,459.

35. On or about January 22, 2020, National Salvage wrote a letter to Atlantic Can in a fact-finding effort to get to the bottom of these discrepancies. A true and accurate copy of the correspondence is attached as **Exhibit H**.

36. Specifically, National Salvage sought information and documents including bills of lading from Atlantic Can to investigate FECR's claims and verify the reported tie-counts but to date, had not received any response from Atlantic Can to these requests.

37. Atlantic Can responded in an e-mail on January 24, 2020, denying any wrongdoing or incorrect tie-counts and explaining that Atlantic Can does not use bills of lading or keep truck logs. A true and accurate copy of the correspondence is attached as **Exhibit I**.

38. Atlantic Can further stated that it regularly submitted detailed tie-counts which provided the number and location of all ties removed, stockpiled, and/or crushed.

39. Due to FECR's alleged incorrect concrete tie-count, FECR claims that National Salvage instead owes a net total amount of $319,240.07 to FECR under the FECR Contract and has demanded payment from National Salvage. A true and accurate copy of the correspondence is attached as **Exhibit J**.

40. National Salvage denies any allegation of an incorrect tie-count as alleged by FECR and demands full payment of the amount owed totaling $486,132.93.

41. In the alternative, National Salvage seeks recovery from Atlantic Can for amounts owed due to inaccurate accounting of concrete rail ties removed and disposed.

## COUNT I – BREACH OF CONTRACT- FECR

42. Paragraphs 1 through 41 are incorporated herein by reference.

43. Under the FECR Contract, National Salvage and FECR agreed to terms for the removal, disposal and/or resale of railroad ties and railroad rails.

44. In return for National Salvage's agreement to remove, dispose and/or resell railroad ties and railroad rail, National Salvage was entitled to payment at the rates agreed by FECR.

45. National Salvage performed as agreed under the FECR Contract.

46. However, FECR has made minimal payment on the amount owed under the FECR Contract.

47. Despite demands for payment on the amounts owed under the FECR Contract, FECR has failed to make full payment.

48. Therefore, FECR has breached the FECR Contract with National Salvage.

49. National Salvage is entitled to full payment from FECR on the amounts owed under the FECR Contract, totaling $486,132.93 along with applicable interest, costs and penalties.

## COUNT II – UNJUST ENRICHMENT- FECR

50. Paragraphs 1 through 49 are incorporated herein by reference.

51. During the course of August 2017 to July 2019, National Salvage conferred a benefit upon FECR by removing, disposing and/or resale of railroad ties and railroad rail for FECR.

52. FECR appreciated and acknowledged this benefit through partial payment for National Salvage's work and has retained the full benefit of National Salvage's removal of the railroad ties as agreed.

53. The unpaid value for National Salvage's work for FECR is $486,132.93.

54. FECR is improperly withholding payment from National Salvage, claiming unsupported inaccuracies in the number of ties removed by Atlantic Can.

55. This claim does not excuse FECR's obligation to pay for the benefit it received from National Salvage.

56. FECR has been unjustly enriched through National Salvage's services for which it has not fully paid.

57. National Salvage, is entitled to full payment on the benefit conferred upon FECR in the total amount of $486,132.93 along with applicable interest, costs and penalties.

### COUNT III – PROMISSORY ESTOPPEL- FECR

58. Paragraphs 1 through 57 are incorporated herein by reference.

59. FECR promised to pay National Salvage for removing, disposing and/or resale of railroad ties and railroad rail.

60. FECR's promise was clear, definite, unequivocal and reasonably calculated to induce National Salvage to act in reliance thereon and National Salvage's reliance upon FECR's promise was reasonable and foreseeable.

61. In reliance thereon, and to its detriment, National Salvage engaged Atlantic Can and removed, disposed, and/or resold railroad ties and railroad rail.

62. National Salvage has been injured by its reliance upon FECR's promise because FECR thereafter failed to make payment.

63. At the time of making its promise, FECR could reasonably foresee that its failure to perform pursuant to its promise would cause the damages that National Salvage has suffered.

64. National Salvage reliance upon FECR's promise has resulted in injury and an injustice to National Salvage which can be avoided only by enforcing FECR's

promise to payment of the total amount of $486,132.93 along with applicable interest, costs and penalties.

### COUNT IV – BREACH OF CONTRACT- ATLANTIC CAN

65. Paragraphs 1 through 41 are incorporated herein by reference.

66. Through the parties' discussion, correspondence, performance, and submission of invoices from January 2018 through July 2019, National Salvage and Atlantic Can agreed to be bound by the terms stated therein and perform pursuant to those terms.

67. National Salvage agreed to pay Atlantic Can for the removal and disposal of railroad ties at the proposed terms at the stated price.

68. In addition, National Salvage granted Atlantic Can the right to sell scrap metal produced from the destruction of approximately 50,000 concrete ties in an amount not to exceed 1000 gross tons.

69. National Salvage paid Atlantic Can for the removal and disposal of railroad ties based upon Atlantic Can's reporting of the number of ties removed and disposed.

70. Atlantic Can has incorrectly documented the number of ties removed and disposed.

71. Therefore, Atlantic Can received an overpayment and has breached its contract with National Salvage.

72. National Salvage is entitled to repayment from Atlantic Can in an amount to be determined at a trial along with applicable interest, costs and penalties.

## COUNT V — UNJUST ENRICHMENT- ATLANTIC CAN

73. Paragraphs 1 through 41 and 65 through 72 are incorporated herein by reference.

74. During the course of January 2018 through July 2019, National Salvage conferred a benefit upon Atlantic Can by payment to Atlantic Can for ties which Atlantic Can allegedly removed and disposed of.

75. Atlantic Can appreciated and acknowledged this benefit through retention of National Salvage's payments.

76. National Salvage paid Atlantic Can for the removal and disposal of railroad ties in reliance upon Atlantic Can's accurate reporting of the number of ties removed and disposed.

77. Atlantic Can has provided an incorrect accounting of ties removed and disposed.

78. Atlantic Can has been unjustly enriched through payment in excess of the amount to which it is properly entitled due to incorrect accounting of ties removed and disposed.

79. National Salvage is entitled to return of the benefit amount wrongly claimed by and conferred upon Atlantic Can.

## COUNT VI – PROMISSORY ESTOPPEL- ATLANTIC CAN

80. Paragraphs 1 through 41 and 65 through 79 are incorporated herein by reference.

81. Atlantic Can promised the removal and disposal of railroad ties in amounts to be documented and National Salvage to pay a set rate accordingly.

82. Atlantic Can's promise was clear, definite, unequivocal and reasonably calculated to induce National Salvage to act in reliance thereon and National Salvage's reliance upon Atlantic Can's promise was reasonable and foreseeable.

83. In reliance thereon, and to its detriment, National Salvage paid Atlantic Can and issued an invoice reliant upon this work to FECR.

84. National Salvage has been injured by its reliance upon Atlantic Can's promise because Atlantic Can failed to accurately account for the number of railroad ties removed and disposed of.

85. At the time of making its promise, Atlantic Can could reasonably foresee that its failure to properly perform pursuant to its promise would cause the damages that National Salvage has suffered.

86. National Salvage reliance upon Atlantic Can's promise has resulted in injury and an injustice to National Salvage which can be avoided only by enforcing Atlantic Can's promise to perform as agreed and has resulted in injury to National

Salvage in an amount to be determined at a trial along with applicable interest, costs and penalties.

**WHEREFORE**, National Salvage prays for judgment as follows:

(A) That National Salvage be awarded the full amount due from FECR ($486,132.93) with both pre and post judgment interest plus all applicable costs fees and penalties;

(B) That, in the alternative, National Salvage be awarded from Atlantic Can an amount to be determined at a trial by jury with both pre and post judgment interest plus all applicable costs fees and penalties;

(C) That National Salvage be awarded its attorneys' fees and the costs of the action as provided by law and otherwise by court rule; and

(D) Any other and further, including equitable relief, as the Court deems just and proper.

## JURY DEMAND

National Salvage hereby demands trial by jury as to all issues so triable in this action.

        Respectfully submitted,

        */s/ Robert C. Folland*
        Robert C. Folland (1007951)
        BARNES & THORNBURG LLP
        4540 PGA Boulevard, Suite 208
        Palm Beach Gardens, FL 33418
        Telephone: (561) 473-7560
        Facsimile: (561) 473-7561

        *Attorney for Plaintiff National Salvage & Service Corporation*